IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PIOTR NOWAK** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 12-4165** |
| **PENNSYLVANIA PROFESSIONAL** | : | |
| **SOCCER, LLC, et al.** | : | |

**KEARNEY, J.**                                                                                                        **January 11, 2016**

## MEMORANDUM

Parties agreeing to arbitrate their employment disputes must understand a federal court reviewing the selected arbitrator's decision gives extreme deference to the arbitrator's findings. If unhappy with the arbitrator's decision and seeking a court to vacate the decision, a party should know federal courts do not second guess but instead presume the reasoned award is enforceable. We only review these issues when the arbitration winner moves to confirm or a disappointed party moves to vacate, the arbitration award. When, as presented here, a disappointed employee moves to vacate but cannot meet the limited statutory grounds to vacate a fully-litigated award, we may enter the accompanying Order granting the winning employer's motion to confirm the arbitration award and deny the disappointed employee's motion to vacate.

### I.     BACKGROUND

Piotr Nowak ("Nowak") agreed to coach the Philadelphia Union professional soccer team owned by Pennsylvania Professional Soccer, LLC and Keystone Sports and Entertainment, LLC (collectively, "Philadelphia Union") under a June 1, 2009 Employment Agreement ("Employment Agreement"). The parties agreed to mandatory arbitration and later agreed to extend Nowak's employment through December 31, 2015.

In June 2012, Philadelphia Union terminated Nowak based on behavior allegedly violating the Employment Agreement. On June 13, 2012, Philadelphia Union notified Nowak of its decision to end the Employment Agreement. Nowak then filed this action arguing the Philadelphia Union lacked a contractual right to end his Employment Agreement. Philadelphia Union moved to dismiss the complaint and to compel arbitration. On September 26, 2012, Judge Mary A. McLaughlin of this Court ordered the parties honor their Employment Agreement and arbitrate their dispute.

The parties selected Margaret R. Brogan, Esquire ("Arbitrator Brogan") to arbitrate. She held five (5) days of hearings. After reviewing the evidence, Arbitrator Brogan issued an Interim Award on April 21, 2015 in favor of Philadelphia Union, denying Nowak's claims and granting Philadelphia Union's counterclaims. Arbitrator Brogan found Nowak violated Sections III (A)(2), (3) and (7) of the Employment Agreement by egregious conduct including interfering with players' rights to engage in union activities, threatening safety and health of players, hazing rookie players, seeking other employment, disparaging the Philadelphia Union in violation of the Employment Agreement terms, and violating League and team rules.[1] Arbitrator Brogan found Philadelphia Union complied with notice and good faith requirements in the Employment Agreement, properly exercised its discretion in ¶III(A) of the Employment Agreement terminating Nowak for cause, and did not owe Nowak further compensation.[2] On November 5, 2015, Arbitrator Brogan entered a Final Award directing Nowak pay Defendants' attorneys' fees and costs and the parties pay their share of administrative fees and expenses of the American Arbitration Association. Nowak now moves to vacate Arbitrator Brogan's awards, and Philadelphia Union moves to confirm them.

## II. ANALYSIS

Our review of Arbitrator Brogan's arbitration awards "could be generously described only as extremely deferential."[3] We are permitted to vacate arbitration awards only in "exceedingly narrow" circumstances.[4] Mere disagreement with the arbitrator's decision or belief the arbitrator committed error is insufficient to vacate or modify the award.[5] Nowak, as the party seeking vacatur, bears this heavy burden of proof.[6]

Congress defined the narrow circumstances under which we may vacate an arbitration award in Section 10 of the Federal Arbitration Act (FAA).[7] Awards may be vacated where: (1) procured by corruption, fraud, or undue means; (2) the arbitrator demonstrated evident partiality or corruption; (3) the arbitrator was guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrator exceeded her powers or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.[8]

Nowak does not dispute an arbitration award is presumed valid unless affirmatively shown otherwise.[9] Nowak seeks to vacate the arbitration awards under 9 U.S.C. §10(a)(2), (3) and (4) claiming Arbitrator Brogan "made unjustified applications of the law" by improperly relying on unauthenticated hearsay statements, "exceeded her powers" because the award cannot be rationally derived from the parties' submissions, and/or evidences impermissible bias in favor of Philadelphia Union.[10]

Although Nowak's motion to vacate properly phrases the proscriptions of §§10(a)(2), (3) and (4), he actually seeks vacatur based on alleged factual or legal errors, which are not valid bases for vacating an arbitrator's award.[11] We "cannot vacate an arbitration award because [we]

3

disagree with the arbitrator's findings on the merits of the case or because [we] believe... the arbitrator made a factual or legal error."[12] As our Court of Appeals counsels, "review of the arbitrator's factual findings is not whether those findings were supported by the weight of the evidence or even whether they were clearly erroneous. All that is required is some support in the record."[13]

We address Nowak's contentions under 9 U.S.C. §10(a)(2), (3) and (4).

### A. Arbitrator Brogan did not misapply the Law.

Nowak first asks we vacate Arbitrator Brogan's decision under §10(a)(3) because she misapplied the law causing him material prejudice. Nowak specifically claims Arbitrator Brogan: (1) improperly relied on unauthenticated hearsay statements by Dr. Hummer in concluding Nowak subjected players, including some injured players, to dangerous conditions by being forced on a ten (10) mile run without proper hydration; and (2) failed to acknowledge Nowak did not have a full opportunity to respond to the Union's claims against him because he was not given a copy of the Major League Soccer ("MLS") report until the arbitration, and accordingly did not have a meaningful opportunity to respond and cross-examine his accusers.

We do not find Arbitrator Brogan misapplied the Law in a manner causing Nowak prejudice.[14] There is no evidence Arbitrator Brogan relied on Dr. Hummer's letter to support her findings. Arbitrator Brogan's awards highlight sufficient independent evidence supporting her conclusion Nowak threatened players' health and safety by requiring all players, including injured players, to participate in a ten (10) mile run while denying them access to water. To support this conclusion, Arbitrator Brogan references independent testimony from players, Philadelphia Union's trainer Mr. Rushing, and Nowak.[15] Arbitrator Brogan concluded, based on evidence presented, Nowak exercised bad judgment ignoring the advice of certified trainers.[16]

4

We also find no error causing prejudice in Arbitrator Brogan's conclusion Nowak had a meaningful opportunity to respond to the Major League Soccer report and cross-examine witnesses, consistent with his Employment Agreement.[17] "As long as the arbitrator has *arguably* construed or applied the contract, the award must be enforced."[18] "[O]nly where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."[19]

Arbitrator Brogan construed Nowak's Employment Agreement to require only: (1) notice to Nowak of any reasons supporting termination; and (2) an opportunity to respond. She concluded Nowak received these bargained-for rights.[20] Based on evidence adduced during the five (5) days of hearings, Arbitrator Brogan found Mr. Sakiewicz met with Nowak on June 13, 2012 and gave him a termination letter outlining reasons for termination. Nowak acknowledged he had the opportunity to respond to the charges at the termination meeting, but did not seize that opportunity.[21] While Arbitrator Brogan states in her award "it would have been better if [Philadelphia Union] had allowed [Nowak] the opportunity to review the report when he was terminated", she ultimately found the arbitration provided a fair opportunity to respond to particular deficiencies cited in the Major League Soccer Report and cross-examine his accusers, satisfying "the right he bargained for in his Employment Agreement."[22] Arbitrator Brogan's findings construing the Employment Agreement and finding Philadelphia Union complied with its terms are supported by record evidence. We do not find manifest disregard of the Employment Agreement.

### B. Arbitrator Brogan's award is not completely irrational.

Nowak alternatively asks we vacate because the awards cannot be rationally derived from the evidence presented and/or is internally inconsistent, contradictory and completely irrational.[23]

5

We find Arbitrator Brogan's conclusions regarding Dr. Hummer's letter and Nowak's opportunity to address the MLS report adequately supported by the record.

Nowak claims inconsistency because Arbitrator Brogan identified the months leading up to June 2012 as the relevant period of review, then inexplicably accepted and relied on testimony about employment opportunities Nowak allegedly explored in 2010 and 2011. Arbitrator Brogan found Nowak violated his Employment Agreement by attempting to secure another position and disparaging the Philadelphia Union.[24] This finding is adequately supported by evidence and is not based solely on opportunities explored through Mr. Messing in 2010 and 2011. Evidence showed Nowak sought other employment opportunities through sports agent Michael Morris and former player Veljko Paunovic in 2012. Mr. Messing also told Philadelphia Union in 2012 about Novak's disparaging comments about the Philadelphia Union and its management to a local sports broadcaster.[25] We do not find any inconsistency in Arbitrator Brogan's conclusion these acts violated Nowak's Employment Agreement.

Nowak also claims Arbitrator Brogan's conclusion he threatened the health and safety of his players by insisting they participate in a ten (10) mile run in extreme weather without proper hydration is completely irrational because she improperly disregarded evidence the temperature was "comfortable" and humidity was "low." We do not find disregarding this evidence, even if true, undermines Arbitrator Brogan's finding regarding players' health and safety. As Arbitrator Brogan observed, Nowak *admitted* he denied players access to water during a training run over team trainers' objections, and "never denied" he called players who complained of concussion symptoms "pussies" or "weak."[26] Arbitrator Brogan's conclusion Nowak threatened Philadelphia Union players' health and safety by these acts is adequately supported by ample record evidence.

6

We do not agree evidence of comfortable temperatures and low humidity mandate a different finding, nor is it completely irrational.

Nowak claims error and inconsistency in Arbitrator Brogan's finding Philadelphia Union CEO Mr. Sakiewicz terminated him for purportedly egregious misconduct, including hazing of rookie players. Nowak contends Mr. Sakiewicz already knew of and did not oppose Nowak's purported hazing ritual. After reviewing five days of evidence, Arbitrator Brogan found Mr. Sakiewicz could have done more to stop the hazing, but ultimately, Nowak's obligations did not permit participating in and encouraging veteran players to participate in the hazing, and this permission violated the Employment Agreement.[27] We reject Nowak's claim of error or inconsistency sufficient to vacate Arbitrator Brogan's award.

### C. There is no evidence of Arbitrator Brogan's bias or impartiality.

Relying on the same allegations of internally inconsistent conclusions which we already rejected, Nowak argues Arbitrator Brogan exhibited bias or evident partiality proscribed by FAA §10(a)(2). Nowak claims Arbitrator Brogan had a 'distaste' for his "hard-nosed approach to coaching" and improperly concluded he had an "unacceptable" attitude toward concussions, while ignoring evidence Nowak encouraged players to wear helmets and overlooked the fact no one complained about him having problems with concussions.

To set aside an arbitrator's award on grounds of "evident impartiality," Nowak must show "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration."[28] The evidence must be "powerfully suggestive of bias," for example, not being able to present arguments and evidence on the merits.[29] Nowak does not identify particular evidence showing Arbitrator Brogan's bias or partiality, but instead points to language in the arbitration award criticizing Nowak's concussion policies as "simply unacceptable," while

7

allegedly disregarding evidence Nowak ordered safety helmets for players. We do not find Arbitrator Brogan's word choice constitutes evidence of impermissible bias to support vacatur.

### III. CONCLUSION

To our continuing surprise, intelligent and worldly parties often sign agreements to arbitrate future disputes and limit their fulsome due process citizen rights to a federal court and jury believing they will obtain a quicker answer with less costs. Like the estimable District Judge William G. Young, we find privately arbitrating issues between parties of disparate bargaining power particularly in the employment area "bestrides the legal landscape like a colossus" with the only possible remaining perceived benefit obtained in the secrecy of private arbitration without the benefit of the community's input on the development of the Law.[30]

Federal courts continue to resolve matters under Fed.R.Civ.P. 1, particularly as amended on December 1, 2015, more expeditiously than in many private arbitrations.[31] As confirmed in this case, the lawyer and arbitrator fees and costs in private arbitrations are often equal or exceed the fees in a taxpayer-funded and Article III Court from which there are meaningful rights to appeal. Lastly, as the parties learned in this case, once they seek judicial scrutiny or confirmation in the public courthouse, they may lose secrecy.

We favor alternative dispute resolution especially between parties of equal bargaining power motivated to finally resolve their dispute in private and with no appeal right. Parties can always seek the aid of this Court or, if necessary, an experienced private mediator, including men and women who formerly served this Court with distinction, in reaching a confidential settlement. While we encourage private settlements, this case, and many like it, should remind parties and counsel of the risks in cavalierly agreeing to mandatory arbitration when they should know, from

experience, of a need to often ask a judicial officer to vacate findings from a private forum and the judge's deference to the private forum.

After a vigorous litigation agreed to be resolved by a single arbitrator outside of court resulting in five (5) days of hearings and substantial briefing, Arbitrator Brogan found specific grounds to deny Nowak's requested finding the Philadelphia Union breached his contractual rights by firing him. Arbitrator Brogan disagreed with Nowak. Nowak understandably seeks this Court's expansive review of Arbitrator Brogan's findings. His arguments are directed largely to the weight of the evidence and challenges to factual findings supported by cited facts. Nowak signed an agreement to arbitrate and unless he meets certain limited grounds, we defer to the selected arbitrator's findings after evaluating exhibits and witnesses for five (5) days. He has not established any ground justifying vacatur. Because Nowak shows no basis to disturb Arbitrator Brogan's awards, we deny Nowak's motion to vacate and grant Philadelphia Union's cross-motion to confirm in the accompanying Order.

---

[1] AAA April 21, 2015 Interim Arbitration Award, (ECF Doc. No. 22, Exh. "A") ("Arb. Award").

[2] Arbitrator Brogan also granted Philadelphia Union's counterclaims seeking reimbursement of advance payments to Pino Sports, LLC, a company owned by Nowak, and attorneys' fees incurred to collect this advance of funds. Nowak does not challenge this aspect of the award.

[3] *Dluhos v. Strasberg*, 321 F.3d 365, 372 (3d Cir.2003).

[4] *Rita's Water Ice Franchise Co. v. Simply Ices, Inc.*, No. 08-2011, 2008 WL 4483812 *2 (E.D.Pa. 2008) (quoting *Dluhos*, 321 F.3d at 370).

[5] *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir.1995).

[6] *AAMCO Transmissions, Inc. v. Sally*, No. 08-151, 2008 WL 5272449, at *3 (E.D. Pa. 2008).

[7] *See Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 586–87 (2008).

[8] 9 U.S.C. § 10(a)(1)-(4). In addition, before the Supreme Court's decision in *Hall Street,* our Court of appeals held a district court may vacate an arbitration award if the "arbitrator's decision

evidences a manifest disregard for the law" even though not one of the statutorily prescribed grounds for vacatur. *Dluhos,* 321 F.3d at 369 (internal quotation marks omitted); *Tanoma Min. Co. v. Local Union No. 1269 United Mine Workers,* 896 F.2d 745, 749 (3d Cir.1990). This theory permits vacatur where a party shows the "arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Duferco v. Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir.2003). In *Hall Street,* the Supreme Court held "the grounds for vacatur ... provided by § ... 10 ... of the FAA are exclusive." 552 U.S. at 581.

Since then, the Courts of Appeals are split as to whether manifest disregard of the law remains a viable ground for vacating an arbitration award. The United States Court of Appeals for the Third Circuit has not decided this issue. *Bellantuono v. ICAP Sec. USA, LLC,* 557 F. App'x 168, 173-74 (3d Cir. 2014). ("This Court has not yet ruled on the issue.... We need not do so here."); The Second, Fourth and Ninth Circuits have held manifest disregard of the law survived *Hall Street* because an arbitrator exceeds his powers under 9 U.S.C. § 10(a)(4) by manifestly disregarding the law. *See Stolt–Nielsen SA v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 93–95 (2d Cir. 2008), *overruled on other grounds,* 559 U.S. 662 (2010); *Wachovia Sec. LLC v. Brand,* 671 F.3d 472, 480 (4th Cir. 2012); *Comedy Club, Inc. v. Improv W. Assocs.,* 553 F.3d 1277, 1281 (9th Cir. 2009). Conversely, the Fifth, Eighth and Eleventh Circuits have held that manifest disregard of the law is no longer a valid ground for vacatur in light of *Hall Street. See Citigroup Global Mkts., Inc. v. Bacon,* 562 F.3d 349, 350 (5th Cir. 2009); *Medicine Shoppe Int'l, Inc. v. Turner Invs., Inc.,* 614 F.3d 485, 489 (8th Cir. 2010); *Frazier v. CitiFinancial Corp.,* 604 F.3d 1313, 1314 (11th Cir. 2010).

The First, Tenth, and D.C. Circuits addressed the issue, but have not been forced to decide it. *See Bangor Gas Co., LLC v. H.Q. Energy Servs. Inc.,* 695 F.3d 181, 187 (1st Cir. 2012); *Abbott v. Law Office of Patrick J. Mulligan,* 440 Fed. Appx. 612, 620 (10th Cir.2011) (unpublished); *Affinity Fin. Corp. v. AARP Fin., Inc.,* 468 Fed. Appx. 4 (per curiam) (unpublished).

[9] ECF Doc. No. 46-1, p. 10.

[10] *See PMA Capital Insurance Co. v. Platinum Underwriters Bermuda, Ltd.*, 659 F.Supp.2d 631, 636 (E.D. Pa. 2009).

[11] *Smith v. Drivehere.com*, No. 13-1170, 2014 WL 5027556 (E.D.Pa. 2014) (citing *Dluhos,* 321 F.3d at 370).

[12] *Smith,* 2014 WL 5027556 *2.

[13] *Tanoma Mining Co. Inc. v. Local Union No. 1269, United Mine Workers of America,* 896 F.2d 745, 748 (3d Cir. 1990).

[14] Nowak did not object to Dr. Hummer's letter during the arbitration proceedings, nor did Philadelphia Union offer the letter to prove veracity of the matter asserted.

[15] *See* Arb. Award, p. 20-24.

[16] *Id.* at 42.

[17] *Id.* at 46.

[18] *United Transp. Union Local 1589*, 51 F.3d at 379.

[19] *Id.*

[20] Arb. Award, p. 45.

[21] *Id.* at 31, 45.

[22] *Id.* at 45-46.

[23] *See* 9 U.S.C. §10(a)(4) (permitting vacatur where an arbitrator "exceeded [her] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made.")

[24] *Id.* at 7.

[25] N.T. May 30, 2014 p. 673, 674

[26] *Id.* at 43.

[27] *Id.* at 25, 43.

[28] *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523, n.30 (3d Cir. 1994).

[29] *Id.*; *see also Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997).

[30] *In re Nexium (Esomeprazole) Antitrust Litigation*, 309 F.R.D. 107, 146-147 (D.Mass. 2015). Judge Young, quoting from the Yale Law Journal, offers:

> The diffusion of disputes to a range of private, unknowable alternative adjudicators also violates the constitutional protections accorded to the public – endowed with the right to observe state-empowered decision makers as they impose binding outcomes on disputants. Closed processes preclude the public from assessing the qualities of what gains the force of law and debating what law ought to require.

*Id.* at 147 (quoting Judith Resnick, *Diffusing Disputes: The Public in the Private of Arbitration, the Private in Courts, and the Erasure of Rights*, 124 Yale L.J. 2804 (2015)).

[31] For example, this Court typically schedules an initial pretrial conference within thirty (30) days of service and a date certain trial on employment disputes within nine (9) months of filing or, in this case, certainly by year end 2013.